# BILLY E. HUDLER, ET AL.

## V.

# LINDA B. COLE, ET AL.

Record No. 860669

November 18, 1988

Present: Carrico, C.J., Poff, Compton, Stephenson, Russell, and Thomas, JJ.,
and Gordon, Retired Justice

*Timothy M. Kaine (Little, Parsley & Cluverius, P.C.*, on briefs), for appellants.
*Leslie D. Campbell, Jr. (Campbell and Campbell*, on brief), for appellees.

RUSSELL, J., delivered the opinion of the Court.

This appeal presents the question whether the Virginia Fair Housing Law (Code §§ 36-86 through 96) applies to the rental of space in a mobile home park. We hold that it does.

Because the appeal is taken from the trial court's order sustaining a demurrer, the allegations contained in the motion for judgment must be taken as true for the purpose of resolving the question on appeal. *See Penick* v. *Dekker*, 228 Va. 161, 166, 319 S.E.2d 760, 763 (1984). In January 1985, Billy E. Hudler, III, and his wife made a downpayment for the purchase of a mobile home and began a search for space in a mobile home park on which to locate it. They intended to live in the mobile home with their infant daughter. In mid-January 1985, the Hudlers learned that space was available in the Palm Leaf Trailer Park in Hanover County. They applied to Linda Cole, the owner and operator of the park, for rental space for their mobile home.

Mrs. Cole confirmed the fact that there were vacancies in the park, but when she learned that the Hudlers had a child, she told them that the park already had its "quota" of children and refused to rent space to them for that reason. Other children resided in the Palm Leaf Trailer Park at the time. The Hudlers tried over fifteen other trailer parks without success. All other mobile home parks located near their places of employment were filled to capacity. Mr. Hudler again called the Palm Leaf Trailer Park and was again refused space there because of his child.

The Hudlers and their daughter brought this action for compensatory damages against Linda B. Cole and the Palm Leaf Trailer Park, contending that the Hudlers had suffered compensable losses as a result of an "unlawful discriminatory housing practice" in violation of Code § 36-88. The defendants demurred upon the ground that the Virginia Fair Housing Law, of which Code § 36-88 is a part, is inapplicable to mobile home parks. The demurrer took the position that the rental of space in mobile home

parks is governed instead by the Mobile Home Lot Rental Act (Code §§ 55-248.41 through 55-248.51). One of those sections, 55-248.47, contained antidiscrimination provisions, but in January 1985 those provisions contained no prohibition against discrimination on the basis of parenthood. The trial court agreed with the defendants' position and sustained the demurrer. We granted the Hudlers an appeal.

The Virginia Fair Housing Law (Code § 36-86 et seq.) was enacted in 1972, (Acts 1972, c. 591). Section 36-87(a) provides in pertinent part: "It is the policy of the Commonwealth of Virginia to provide for fair housing throughout the Commonwealth, to all its citizens, regardless of race, color, religion, national origin or sex; and to that end to prohibit discriminatory practices with respect to residential housing . . . ."

Section 36-87(b)(1) defines "[d]welling" as "any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as a residence by one or more families, and any vacant land which is offered for sale or lease for the construction or location thereon of any such building, structure, or portion thereof." Section 36-88 provides, "It shall be an unlawful discriminatory housing practice, because of race, color, religion, national origin, sex, elderliness, parenthood or handicap . . . (1) [t]o refuse to sell or rent . . . or otherwise make unavailable or deny, a dwelling." The terms "elderliness," "parenthood," and "handicap" were added to the foregoing section in 1984, (Acts 1984, c. 685). The section concludes with a provision expressly permitting the operation of an "all-adult or all-elderly housing community."

Other sections provide wide enforcement powers to public bodies and officers. Section 36-94(b) provides civil remedies, including actual damages, costs, attorneys' fees and injunctive relief, to persons adversely affected by discriminatory housing practices.

The Mobile Home Lot Rental Act (Code § 55-248.41 et seq.) was adopted three years later than the Virginia Fair Housing Law. Acts 1975, c. 535. It is addressed to the special circumstances of mobile home ownership, in which the mobile home, a species of personal property, is owned and occupied by a tenant, who leases space from a landlord, who retains title to the underlying land. Section 55-248.41(A) defines "Mobile Home" as "a structure . . . designed to be used as a dwelling . . . ." Other provisions of the act contain various rights and obligations affect-

ing both landlords and tenants. Among these is § 55-248.47, which provides:

> The landlord shall not unreasonably refuse or restrict the sale or rental of a mobile home located in his mobile home park by a tenant. Prior to selling or leasing the mobile home the tenant shall give notice to the landlord, including, but not limited to, the name of the prospective vendee or lessee if the prospective vendee or lessee intends to occupy the mobile home in that mobile home park. The landlord shall have the burden of proving that his refusal or restriction regarding the sale or rental of a mobile home was reasonable. Any refusal or restriction because of race, color, religion, national origin, parenthood, elderliness, handicap, or sex shall be conclusively presumed to be unreasonable. Notwithstanding the above provision, it shall not be an unlawful discriminatory housing practice to operate an all-adult or all-elderly housing community, or to maintain all-adult or all-elderly sections of a housing community.

The term "parenthood" was not contained in the foregoing section in 1985, when the Hudlers sought to rent space in the Palm Leaf Trailer Park. It was added in 1986. Acts 1986, c. 586. Thus, if the Mobile Home Lot Rental Act supplants or preempts the Virginia Fair Housing Law with respect to the rental of space in mobile home parks, the trial court correctly sustained the demurrer.

The defendants argued in the trial court and on appeal that, although the sweeping language of the Virginia Fair Housing Law would appear on its face to cover the rental of space in a mobile home park, the General Assembly clearly intended the Mobile Home Lot Rental Act to supplant it in the mobile home context. This is so, they say, because the Mobile Home Lot Rental Act is later in time, is narrower and more specific, and deals with a special class of persons and a special type of property which were covered only generally, not specifically, by the Virginia Fair Housing Law. They also point to the fact that the two enactments are contained in different titles of the Code, and that neither makes a cross-reference to the other.

By contrast, the defendants point out, the Mobile Home Lot Rental Act specifically incorporates by reference, in Code § 55-

248.48, major parts of the Virginia Residential Landlord and Tenant Act (Code § 55-248.2 et seq.). The Legislature, they argue, could well have done the same with the Virginia Fair Housing Law if it had intended it to apply to mobile home parks. The defendants rely on *Va. National Bank* v. *Harris*, 220 Va. 336, 340, 257 S.E.2d 867, 870 (1979), where we said, "when one statute speaks to a subject in a general way and another deals with a part of the same subject in a more specific manner, the two should be harmonized, if possible, and where they conflict, the latter prevails" (citations omitted).

■ We agree that the foregoing rule of statutory construction controls this case, but we reach the opposite result because we find the two acts under consideration to be complementary and harmonious, not in conflict. The Virginia Fair Housing Law forbids a wide variety of discriminatory practices which impede the sale or rental of "dwellings" to an *initial* prospective purchaser or tenant. The antidiscrimination provisions contained in the Mobile Home Lot Rental Act, on the other hand, address a different situation: an *existing* tenant in a mobile home park, who wishes to sell to a third person the mobile home he owns and occupies, may not be unreasonably impeded by the landlord upon whose land the mobile home is intended to remain. The Virginia Fair Housing Law did not cover that situation, and the Mobile Home Lot Rental Act, in 1975, remedied the omission.

Thus, the two acts complement each other and are in no way conflicting. Each applies to the subject matter within the scope of its language. Because the language of the Virginia Fair Housing Law clearly includes the factual situation alleged in the motion for judgment, the trial court erred in sustaining the demurrer. Accordingly, we will reverse the judgment and remand the case for further proceedings consistent with this opinion.

*Reversed and remanded.*