# CIRCUIT COURT OF THE CITY OF PORTSMOUTH

Janiece L. Cage

v.

William A. Cage

April 3, 2007

Case No. (Civil) 07-0227

BY JUDGE MARK S. DAVIS

This matter comes before the Court on defendant William A. Cage's (hereafter "father") "Motion To Quash Subpoena Duces Tecum" as to four separate health care providers. The factual and procedural background of the case, discussion of the issues and conclusions are set forth below.[1]

## I. *Factual and Procedural Background*

Plaintiff, Janiece L. Cage (hereafter "mother"), filed her complaint in this Court on January 30, 2007, seeking "a divorce *a mensa et thoro* on the grounds of cruelty and/or desertion, to be merged at the proper time and upon

---

[1] Plaintiff was represented at the March 14, 2007, hearing by Diane Pomeroy Griffin, Esquire. Defendant was represented by C. Eric Plumlee, Esquire, with the law firm of MacDonald, Plumlee & Overton, P.C.

her request into a final decree of divorce. . . ." Mother also sought exclusive use and possession of the marital residence; legal and physical custody of the minor children; limitation, supervision, and specification of father's visitation rights; equitable distribution; and other appropriate relief.

On February 26, 2007, counsel for mother issued *subpoenas duces tecum* to Dr. Richard A. Sokol, Christian Psychotherapy Services, Dr. David W. Reid, and Jeffrey S. Katz, Ph. D., seeking production of father's health care records by March 13, 2007. The parties have stipulated that Dr. Sokol is not a licensed mental health care provider, but that the remaining three entities are licensed mental health care providers. On March 8, 2007, father filed motions to quash each of these *subpoenas duces tecum*. Oral argument on these motions to quash took place before the Court on March 14, 2007, at which time the Court also considered father's demurrer and heard evidence from both parties regarding mother's *pendente lite* request for exclusive possession of the marital home. After denying father's demurrer and denying mother's motion for *pendente lite* exclusive possession, the Court took the motions to quash under advisement and requested briefs from the parties. The Court has taken evidence, heard oral argument, and reviewed the briefs of the parties. The matter is now ripe for decision.

## II. *Discussion*

The Court first considers the standard and burden applicable to the motions, and then the assertion of privilege.

### A. *Standard Applicable to Motion to Quash*

Rule 4:9(c)(2) of the Rules of the Virginia Supreme Court, governing attorney-issued subpoenas to non-parties, provides that the Court "may quash, modify, or sustain the subpoena as provided above in subsection (c)(1) of this Rule." Subsection (c)(1) of the Rule provides that a *subpoena duces tecum* may be issued to a non-party for items within the scope of Va. Sup. Ct. Rule 4:1(b). Va. Sup. Ct. Rule 4:1(b)(1), in turn, provides that parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action.

This Court has previously concluded that Va. Sup. Ct. Rule 4:9(c)(2) incorporates the provisions of Va. Sup. Ct. Rule 4:9(c)(1), thereby permitting a *party* to file a motion to quash the requested production. *Bunch v. Artz*, 71 Va. Cir. 358, 362-63 (Portsmouth 2006). However, in considering a motion to quash a subpoena for such records, Va. Sup. Ct. Rule 4:9(c-2) provides that

"[p]atient health records protected by the privacy provisions of Code Section 32.1-127.1:03 shall be disclosed only in accordance with the provisions and procedures prescribed by that statute."

Because the father filed the motion to quash, the burden of persuasion rests upon him, *Goodwyn v. Bowden*, 32 Va. Cir. 330, 331 (Northampton County 1994), and since he seeks to establish the existence of a privileged communication he has the burden of proving that the documents are in fact privileged. *Anderson v. Anderson*, 29 Va. App. 673, 681, 514 S.E.2d 369, 374 (1999).

## B. *Privilege*

### 1. *Licensed Mental Health Care Providers*

Father asserts that Va. Code § 20-124.3:1(a) creates a privilege that prevents disclosure, in discovery, of "records concerning" him kept by any licensed mental health care provider. Va. Code § 20-124.3:1(a) provides that:

> Notwithstanding any other provision of law, in any case in which custody or visitation of a minor child is at issue pursuant to § 20-124.2, whether in a circuit or district court, the records concerning a parent, kept by any licensed mental health care provider and any information obtained during or from therapy shall be privileged and confidential.

Father argues in his letter-brief that this language is clear and unambiguous and mother "has no reason or ability to usurp the statute."[2] Mother responds that the subpoenas were issued in accord with Va. Code § 32.1-127.1:03(D), which provides that a court may order issuance of a subpoena requiring disclosure of

---

[2] One commentator has noted that the 2003 enactment of Va. Code § 20-124.3:1 "makes proof of mental health issues more difficult." Peter N. Swisher et al., *Family Law: Theory, Practice, and Forms*, § 15:7 (2004 edition). That same commentator goes on to observe in the same section, that "[t]he statute is clearly a legislative judgment to protect parents and relatives from what has been a very broad and intrusive aspect of discovery in custody cases, and will no doubt prove controversial in difficult cases." In fact, attempts were made in the recent legislative session to repeal and amend the statute, but no such repeal or amendment took place. *Shoemaker v. Karau*, Record No. 0512-06-4, 2007 Va. App. LEXIS 126, *2, n. 1 (March 27, 2007).

medical records where good cause is shown and that, where good cause exists, such authority trumps the privilege created by Va. Code. § 20-124.3:1. Mother further argues that this Court should, after the fact, determine that good cause exists and permit disclosure. Finally, mother argues that, even if disclosure of records kept by licensed mental health care providers are privileged from discovery in a custody or visitation matter, they may be discoverable under the "good cause" standard of Va. Code § 32.1-127.1:03 for the purpose of considering the divorce and spousal support aspects of the case.

### a. *Which Statute Controls*

The Virginia Court of Appeals has considered the application of Va. Code § 20-124.3:1 on several occasions. Perhaps the best overall explication of the statute came in *Schwartz v. Schwartz*, 46 Va. App. 145, 152-53, 616 S.E.2d 59, 63 (2005). There, in the context of a divorce action, the Court of Appeals noted that Va. Code § 20-124.3 requires a court to consider, *inter alia*, the "mental condition of each parent" in determining what custody or visitation arrangements are in the best interests of the child. The Court of Appeals went on to observe that, prior to July 1, 2003, the only statutes governing the admissibility of the testimony of a licensed mental health care provider in a child custody or visitation proceeding were Va. Code § 8.01-399 and § 8.01-400.2. *Id.* The Court continued its analysis, noting that, while "lawyers and judges have been accustomed to breaching this area of confidentiality [in the context of custody and visitation] because the patient has placed his or her mental condition at issue," in 2002, the Virginia "General Assembly passed new legislation specifically limiting the admissibility of mental health records in child custody and visitation proceedings." *Id.*

Judge Clements, concurring in part and dissenting in part in a recent opinion, has noted that Va. Code § 20-124.3:1 "was clearly intended . . . to protect and promote the rights and interests of Virginia's children by making sure those children who need mental health therapy are not deprived by their parents of the benefits of such therapy out of fear that information about the parents revealed during therapy could be used against them in a custody or visitation proceeding." *Rice v. Rice*, 49 Va. App. 192, 207-08, 638 S.E.2d 702, 710 (2006). That concurrence went on to state that "[p]lainly, the statute was also enacted to allow parents with mental health concerns to obtain therapy from a mental health care provider without fear that the information learned about them during therapy would be used against them in a custody or visitation proceeding. The statute also protects parents in visitation or custody

proceedings from having to defend themselves against claims made about them during therapy by their children." *Id.* at 208, n. 4, 638 S.E.2d at 710, n. 4.

The *Schwartz* Court further observed that the statute "provides no exception permitting the trial court to order disclosure for the broad purpose of determining the best interests of the child. Rather, Code § 20-124.2 embodies the General Assembly's chosen method for protecting the best interests of the child; it permits the court to 'order an independent mental health or psychological evaluation to assist the court in its determination of the best interest of the child'." *Id.* at 158, 616 S.E.2d at 66. "Absent such an independent evaluation (and absent any suspicion of abuse or neglect), information 'concerning a parent ... obtained during or from therapy shall be privileged and confidential' and may not be disclosed without the parent's consent." *Id.*

In applying the provisions of Va. Code § 20-124.3:1, the Virginia Court of Appeals, in *Rice v. Rice*, 49 Va. App. 192, 199-200, 638 S.E.2d 702, 706 (2006), adopted a broad literal interpretation and held that the statute applies when the testimony offered is merely adverse to a non-consenting parent's position, even if the testimony does not directly concern the non-consenting parent.

With these principles in mind, we turn to mother's argument that the health records privacy provisions of Va. Code § 32.1-127.1:03(D), in effect, trump the privilege created by Va. Code § 20-124.3:1. However, the plain language of Va. Code § 20-124.3:1 provides that it applies "[n]otwithstanding any other provision of law. . . ." This language clearly reflects the legislature's determination for Va. Code § 20-124.3:1 to govern despite any other conflicting, contrary or seemingly incongruous statutory provision. *See Halifax Corp. v. Wachovia Bank,* 268 Va. 641, 653, 604 S.E.2d 403, 408 (2004) ("[c]ourts are required to apply the plain language of a statute when possible and may not rewrite it").

Even if the statute had no introductory "notwithstanding" provision, established rules of statutory construction provide that "when one statute speaks to a subject in a general way and another deals with a part of the same subject in a more specific manner, the two should be harmonized, if possible, and where they conflict, the latter prevails." *Virginia National Bank v. Harris,* 220 Va. 336, 339, 257 S.E.2d 867, 870 (1979) (relying upon 2A Sutherland, *Statutory Construction,* § 51-05 (4th ed. C. Sands 1973)). Consistent with this rule of statutory construction, harmonizing the two statutes would require the Court to find that the statutory privilege of Va. Code § 20-124.3:1 prevents a finding of "good cause" under Va. Code §

32.1-127.1:03(D). Of course, the alternative option (finding the two statutes inconsistent) would lead the Court to find that Va. Code § 20-124.3:1 conflicts with the authority for courts to order disclosure on a showing of good cause pursuant to Va. Code § 32.1-127.1:03(D), and that the more specific privilege provision controls and prevents disclosure. Therefore, while the Court believes the two statutes can be harmonized, the disclosure is prohibited under either alternative.

It should also be noted that the "good cause" provisions of Va. Code § 32.1-127.1:03(D) were in existence in 2005, when the Court of Appeals observed, in *Schwartz*, 46 Va. App. at 153, 616 S.E.2d at 62, that prior to July 1, 2003, the "only" statutes governing the admissibility of the testimony of a licensed mental health care provider in a child custody or visitation proceeding were Va. Code §§ 8.01-399 and 8.01-400.2, but that after that date Va. Code § 20-124.3:1 controls. *Schwartz*, 46 Va. App. at 153, 616 S.E.2d at 63. The *Schwartz* Court did not mention Va. Code § 32.1-127.1:03(D) as being part of the statutory scheme. *Id.* Since this Court presumes that the *Schwartz* court followed rules of statutory construction and harmonized the existing controlling statutes in making this statement, it seems that the Court was implicitly recognizing that the "good cause" referenced in Va. Code § 32.1-127.1:03(D) was more specifically defined by Va. Code §§ 8.01-399 and 8.01-400.2. This Court must similarly conclude that the "good cause" referenced in Va. Code § 32.1-127.1:03(D) is more specifically defined by Va. Code § 20-124.3:1, effectively preventing disclosure under the limited circumstances defined by that statute.

For these reasons, the Court is compelled to conclude that while Va. Code § 32.1-127.1:03 governs the manner in which medical records are generally produced, the "good cause" provision of Va. Code § 32.1-127.1:03(D) must yield to the more specific privilege provisions of Va. Code § 20-124.3:1. Accordingly, father's records held by the three licensed mental health care providers are "privileged and confidential."

### b. *Spousal Support and Divorce*

Mother argues that, even if the father's records from the licensed mental health care providers are privileged in reference to the custody and visitation aspects of this case, they should not be considered privileged in reference to the spousal support and divorce aspects of the case. More specifically, mother contends that, since the Court must consider, among other things, the mental and physical condition of each of the parties in making a spousal support ruling and since the Court must consider her allegations of

father's constructive desertion as a result of his "behavioral problems," the Court should permit discovery of his records from the licensed mental health care providers for such limited purposes.

Adopting mother's argument would completely eviscerate Va. Code § 20-124.3:1 in all those cases where custody or visitation are at issue in the same case with divorce or spousal support issues. Such an outcome is inconsistent with the plain language of Va. Code § 20-124.3:1, which defines its coverage as follows: "in *any case* in which custody or visitation of a minor child is at issue. . . ." (emphasis added). The statute seems to contemplate the possibility that other matters might be at issue, but fails to exclude coverage in such circumstances. Giving the statute its plain meaning and considering its context and history discussed above, the Court must reject mother's argument. *See Ambrogi v. Koontz*, 224 Va. 381, 389, 297 S.E.2d 660, 664 (1982) (a statute should be given a reasonable construction which will effect rather than defeat a legislative purpose).

## 2. *Physician-Patient Privilege*

One *subpoena duces tecum* was issued to Dr. Richard A. Sokol. Dr Sokol is a health care provider, but he is not a licensed mental health care provider. Therefore, Va. Code § 20-124.3:1 does not apply to his records regarding father. As the Court of Appeals noted in *Schwartz*, such situations are governed by the statutorily-created physician-patient privilege provisions of Va. Code § 8.01-399(B). *Schwartz*, 46 Va. App. at 153, 616 S.E.2d at 63. Furthermore, consistent with this Court's analysis above, it would seem that any production that met the standard of Va. Code § 8.01-399(B) would thereby satisfy the "good cause" provision of Va. Code § 32.1-127.1:03(D).

As the Court of Appeals noted in *Schwartz*, 46 Va. App. at 154, 616 S.E.2d at 64, judges have become accustomed to breaching medical record confidentiality in custody and visitation proceedings "because the patient has placed his or her mental condition at issue." This is so, of course, because Va. Code § 20-124.3 requires that the Court consider the "physical and mental condition of each parent" in making custody and visitation decisions.

While father may have placed his medical condition at issue by contesting custody and visitation, the Court must still apply the discovery provisions of the Rules of the Virginia Supreme Court. *See* Va. Code § 8.01-399(B) (if physical condition of patient at issue, disclosure may be had "only in discovery pursuant to the Rules of Court. . . ."). Father asserts in his motion

to quash that "[s]aid request would serve only to severely embarrass, injure, or invade the privacy of the defendant." Father further argues that the request is overly broad because it does not define a specific time period.

There is no question that the father's physical condition is at issue in a case such as this. However, the Court is also cognizant of the potential for damage resulting from such disclosure. Therefore, pursuant to the Court's authority under Va. Sup. Ct. Rule 4:9(c)(2) and Va. Sup. Ct. Rule 4:1(c), the Court will limit the time period for disclosure to five years before the date of the subpoena and will require the parties to enter into a confidentiality agreement regarding disclosure of such medical information in order to prevent any unnecessary dissemination. *See Shenandoah Publishing House, Inc. v. Fanning*, 235 Va. 253, 262-63, 368 S.E.2d 253, 257 (1988).

### III. *Conclusion*

For the reasons stated above, father's motions to quash are granted in part, with respect to records of the licensed mental health care providers, and denied in part, with respect to Dr. Sokol's records. Since the parties have briefed these issues, the Court will order the filing of the briefs, treat such position statements as preservation of exceptions, and dispense with the Va. Sup. Ct. Rule 1:13 counsel endorsement requirement. It is so ordered.